UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TONYA ROGERS,<br><br>    Plaintiff,<br><br>      v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social Security,<br><br>    Defendant. | Civil Action No. 05-2092 (CKK) |

**MEMORANDUM OPINION**
(November 20, 2006)

      Before the Court are Plaintiff's Motion for Judgment of Reversal and Defendant's Motion for Judgment of Affirmance, respectively, of the decision of an Administrative Law Judge ("ALJ") denying Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSIB") to Plaintiff, pursuant to Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(I), 423, 1381, 1382. After reviewing the parties' briefs, the administrative record, and the relevant case law, the Court shall deny Plaintiff's motion to reverse the judgment and grant Defendant's motion to affirm the judgment.

**I: BACKGROUND**

      Plaintiff Tonya Rogers petitioned the Social Security Administration for DIB and SSIB pursuant to Titles II and XVI of the Social Security Act on April 10, 2002. Mem. in Support of Pl.'s Mot. for J. of Rev. (hereinafter "Pl.'s Mot. for J. of Rev.") at 1. Plaintiff is a female resident of Washington, D.C. and, at the time of the relevant administrative hearing, she was 48 years-old, 5'3" tall, and weighed 240 pounds. Admin. Record ("A.R.") at 267. As such, Plaintiff's body

mass index ("BMI") was 42.5, which correlates to Level III ("extreme") obesity under the relevant guidelines. *See* SSR 02-01p, *Titles II and XVI: Evaluation of Obesity*, 2000 WL 628049 at *2 (S.S.A. Sept. 12, 2002). A high school graduate who had completed one year of college, Plaintiff worked as a security guard and a clerk typist before her impairments allegedly rendered her unable to work. Pl.'s Mot. for J. of Rev. at 3, *see also* A.R. at 267. In her application for DIB and SSIB, Plaintiff alleged disabilities including right eye blindness, arthritis, headache, depression, and post-traumatic stress disorder, commencing on January 5, 1996. Pl.'s Mot. for J. of Rev. at 3, A.R. at 248-50.[1] In addition, although Plaintiff did not allege such conditions to constitute disabilities, Plaintiff is obese with a history of depression and has trouble with concentration, social interaction, and adaptation.[2] Pl.'s Mot. for J. of Rev. at 3.

After Plaintiff's claims were denied initially and upon reconsideration, she requested a hearing before an Administrative Law Judge ("ALJ"). A.R. at 15. That hearing occurred on

---

[1] In applying for SSIB and DIB, Plaintiff alleged an onset date of January 5, 1996. A.R. at 248. During Plaintiff's hearing before the ALJ on February 10, 2005, Plaintiff's counsel indicated that Plaintiff intended to amend her alleged onset date to sometime in December 2004 because she had continued working through that time. *Id.* at 265. The ALJ's opinion does not mention this amended onset date, and the ALJ specifically found that Plaintiff had been gainfully employed from 1996 through 2003. *Id.* at 16. However, Plaintiff's Motion for Judgment of Reversal does not take issue with the onset date discussed in the ALJ's opinion, nor is there any suggestion that the onset date would have changed the ALJ's conclusions in any way as Plaintiff was no longer employed as of the time of her hearing.

[2] In addition to Plaintiff's mental and physical ailments, the record contains evidence of Plaintiff's past drug and alcohol abuse. A.R. at 17, 19, 21, 266, 269. During Plaintiff's administrative hearing on February 10, 2005, Plaintiff's attorney acknowledged her history of cocaine abuse, *id.* at 266, and Plaintiff testified that she had last used cocaine four years prior to the hearing and alcohol a year before the hearing, *id.* at 269. The ALJ's opinion specifically contemplated Plaintiff's alcohol and drug abuse, *id.* at 17, 19, and also gave credit to the opinion of State Agency psychological consultant Dr. Patricia Cott that abstinence from drugs and alcohol would allow Plaintiff to perform routine, regular work. *Id.* at 21, 213.

February 10, 2005. *Id.* at 264. Plaintiff was represented by counsel and Tanya Hubacker, a vocational expert ("VE") testified. *Id.* at 264-78. In a decision dated March 14, 2005, the ALJ denied Plaintiff's requested benefits. *Id.* at 15-24. The ALJ found that Plaintiff met the nondisability requirements of Section 216(I) of the Act and was insured through the date of the decision. *Id.* at 16. The ALJ then properly evaluated Plaintiff's disabilities using the required five-step process. *See* 20 C.F.R. § 404.1520(a)(4) (listing five-step sequential evaluation process). *Id*. At Step One, the ALJ noted that Plaintiff had engaged in significant gainful activity between 1996 and 2003. *Id.* At Step Two, he determined that the medical evidence established that Plaintiff suffers from "severe" depression and substance addiction. *Id.* at 18. At Step Three, the ALJ determined that Plaintiff's condition did not meet or medically equal any of the Listings of Impairments at Appendix 1, Subpart P, No. 4 (20 C.F.R § 404.1520(d)). *Id.* The ALJ then found that Plaintiff retained the residual functional capacity ("RFC") to perform "a significant range" of unskilled light work, as long as Plaintiff had the option to sit or stand and her general public contact was limited. *Id.* at 19.

At Step Four, the ALJ found that Plaintiff was no longer able to perform her prior work as a security guard or typist, and that none of her skills from past work were transferrable. *Id.* at 21. At Step Five, relying on the VE and looking to the Medical-Vocational Guidelines, the ALJ determined that Plaintiff was able to do other work that existed in significant numbers in the national economy, including as a router (40,000 nationally and 400 locally), non-postal mail clerk (50,000 nationally and 700 locally), sorter (20,000 nationally and 350 locally) and, at the sedentary level, as a document preparer (20,000 nationally and 450 locally), final assembler (38,000 nationally and 400 locally), and addresser (38,000 nationally and 400 locally). *Id.* at 21-

22. As such, the ALJ concluded that "the claimant retains the capacity for work that exists in significant numbers in the national economy and is not under a 'disability' as defined in the Social Security Act, at any time through the date of this decision." *Id* at 22 (citing 20 C.F.R. §§ 404.1520(f) and 416.920(f)). Plaintiff appealed this decision, but in a decision issued August 23, 2005, the Appeals Council determined there was no basis for granting review. A.R. at 5-6. Having fully exhausted her administrative remedies, Plaintiff filed suit in this Court seeking relief on October 25, 2005.

Plaintiff identifies four main flaws in the ALJ's decision. First, she complains that the ALJ failed to consider her obesity in his determination, as required by Social Security Rulings 02-01p and 96-8p. Pl.'s Mot. for J. of Rev. at 4-9. Second, she argues that the ALJ erroneously assessed her RFC by failing to engage in the required "function by function" assessment of her ability to withstand the physical demands of work. *Id*. at 9-17. In doing so, Plaintiff alleges the ALJ did not properly support his conclusions with analysis, and that the ALJ's decision is not supported by substantial evidence. *Id*. at 13, 17. Third, Plaintiff asserts that the ALJ erroneously relied on the testimony of the VE because he presented the VE with an under-inclusive hypothetical question in attempting to elicit testimony on jobs that Plaintiff could perform. *Id.* at 17-19. Finally, Plaintiff claims that the ALJ erroneously evaluated Plaintiff's subjective complaints because his evaluation of her medical records and her credibility were contemporaneous rather than sequential. *Id.* at 19-22.

Defendant makes a motion for Judgment of Affirmance of the ALJ's decision and disputes Plaintiff's characterization of that opinion. Mem. in Support of Def.'s Mot. for J. of Aff. and in Opp'n to Pl.'s Mot. for J. of Rev. (hereinafter "Def.'s Mot. for J. of Aff."). After

recounting the evidence in the record, Defendant counters that the ALJ's decision was supported by substantial evidence, *id.* at 9-12; that the ALJ's assessment of Plaintiff's credibility in considering the medical evidence was proper, *id.* at 12; that a function-by-function analysis was unnecessary to the ALJ's RFC analysis, *id.* at 12-13; and finally that Plaintiff "never alleged that obesity was a reason for not being able to work, and there is no indication that her obesity affected her ability to function," *id.* at 13-15.

## II: LEGAL STANDARD

"In a disability proceeding, the ALJ 'has the power and the duty to investigate fully all matters in issue, and to develop the comprehensive record required for a fair determination of disability.'" *Simms v. Sullivan*, 877 F.2d 1047, 1050 (D.C. Cir. 1989) (quoting *Diabo v. Sec'y of HEW*, 627 F.2d 278, 281 (D.C. Cir. 1980)).  The Social Security Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (2004).  Inability to engage in substantial gainful activity not only includes the individual's inability to do his previous work, but requires as well an inability, "considering his age, education, and work experience, [to] engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* at § 423(d)(2)(A).  In making this determination, the ALJ is to consider (1) medical data and findings, (2) expert medical opinions, (3) subjective complaints, and (4) the plaintiff's age, education, and work history; however, "[t]he expert opinions of a

treating physician are binding on the fact finder unless contradicted by substantial evidence to the contrary." *Davis v. Heckler*, 566 F. Supp. 1193, 1196 (D.D.C. 1983) (citing cases).

A court will not disturb the determination of the Commissioner if it is based on substantial evidence in the record and the correct application of the relevant legal standards. 42 U.S.C. §§ 405(g), 1383(c); *Butler v. Barnhart*, 353 F.3d 992, 999 (D.C. Cir. 2004). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted). While a scintilla of evidentiary support is insufficient, the test can be satisfied by "something less than a preponderance of the evidence." *Fla. Mun. Power Agency v. FERC*, 315 F.3d 362, 365-66 (D.C. Cir. 2003). In reviewing an administrative decision, a court may not determine the weight of the evidence, nor substitute its judgment for that of the Secretary if her decision is based on substantial evidence. *Butler*, 353 F.3d at 999; *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Instead, the reviewing court must carefully scrutinize the entire record to determine whether the Secretary, acting through the ALJ, has analyzed all the evidence and has sufficiently explained the weight she has given to obviously probative material. *Id*. "Because the broad purposes of the Social Security Act require a liberal construction in favor of disability, the court must view the evidence in the light most favorable to the claimant." *Martin v. Apfel*, 118 F. Supp. 2d 9, 13 (D.D.C. 2000) (citing *Davis v. Shalala*, 862 F. Supp. 1, 4 (D.D.C. 1994)).

The reviewing court must also determine whether credible evidence was properly considered. *Id.* (citing *Dionne v. Heckler*, 585 F. Supp. 1055 (D.Me. 1984)). The ALJ's final decision must contain "a statement of findings and conclusions, and the reasons or the basis therefor, on all material issues of fact, law, or discretion presented on the record." 5 U.S.C. §

557(c). Importantly, an ALJ cannot merely disregard evidence which does not support his conclusion. *Dionne*, 585 F. Supp. at 1060. A reviewing court should not be left guessing as to how the ALJ evaluated probative material, and it is reversible error for an ALJ to fail in his written decision to explain sufficiently the weight he has given to certain probative items of evidence. *Martin*, 118 F. Supp. 2d at 13 (citing *Davis*, 862 F. Supp. at 2).

### III:  DISCUSSION

To qualify for SSIB and DIB, Plaintiff must demonstrate that she cannot engage in "substantial gainful activity by reason of any medically determinable physical . . . impairment," and that the physical impairments prevent her from engaging in her previous work, or any other kind of "substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(1)-(2); *id.* § 1382c(a)(3). By satisfying both conditions, a claimant is "disabled" for purposes of the Social Security Act.

To decide whether a claimant has proven she is disabled, the ALJ must use a five-step sequential analysis. 20 C.F.R. §§ 404.1520, 416.920. The steps require a determination of (1) current work activity; (2) severity of the impairments; (3) whether the impairment meets or equals a listed impairment; (4) if the impairment prevents claimant from doing past work; (5) if the impairment prevents her from doing other work upon consideration of the RFC. *Id*. Each step requires a detailed inquiry into the evidence presented, based on additional regulations as well as Social Security Rulings ("SSR"). The Court will identify the relevant inquiry in a manner which mirrors the way Plaintiff sets out her motion for judgment of reversal, rather than address each of these detailed requirements here; however, it is sufficient to indicate that Plaintiff challenges the ALJ's application of this sequence to her claim. For the reasons set forth below,

the Court finds that the law was appropriately applied and that the ALJ's opinion was supported by sufficient evidence, and shall therefore deny Plaintiff's motion for a judgment of reversal.

### 1. *Consideration of Obesity*

Plaintiff argues that the ALJ's decision failed to address all of the relevant evidence because the ALJ did not consider Plaintiff's obesity at any step of the sequential process, as required by Social Security Ruling 02-01p ("SSR 02-01p"). Pl.'s Mot. for J. of Rev. at 4-9. Defendant replies that the ALJ's failure to expressly consider Plaintiff's obesity in his opinion does not require a remand because "Plaintiff never alleged that obesity was a reason for not being able to work, and there is no indication that her obesity affected her ability to function." Def.'s Mot. for J. of Aff. at 13. Although Plaintiff is correct that SSR 02-01p creates an affirmative duty on the part of the ALJ to consider obesity in making his determination, a number of courts have found that a failure to do so constitutes harmless error where, as here, there is no indication that such consideration would affect the ALJ's conclusions. As a result, this Court finds that the fact that the ALJ did not expressly address Plaintiff's obesity in his opinion does not, without more, require remand.

Plaintiff asserts that the administrative record contained evidence of her height and weight, both in medical records and in her testimony at the hearing before the ALJ, Pl.'s Mot. for J. of Rev. at 6 (citing A.R. 62, 267), and that as a result the ALJ should have considered her obesity in conjunction with her impairments that might be compounded by obesity, such as arthritis. Plaintiff is correct that SSR 02-01p provides that the ALJ will, "use [his] judgement to establish the presence of obesity based on the medical findings and other evidence in the case record, even if a treating or examining source has not indicated a diagnosis of obesity." SSR 02-

01p, 2000 WL 628049 at *3.  SSR 02-01p further "remind[s] adjudicators to consider [obesity's] effects when evaluating disability."  *Id.* at *1.  Indeed, "[t]he provisions also remind adjudicators that the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately."  *Id.*  Plaintiff is also correct that, while the ALJ's opinion notes Plaintiff's height and weight, the opinion includes no explicit consideration of Plaintiff's obesity in connection with the evaluation of her disabilities.  A.R. at 15-24.

Relying primarily on three cases, Plaintiff argues that this failure constitutes reversible error.  Pl.'s Mot. for J. of Rev. at 6-9 (citing *Fleming v. Barnhart*, 284 F. Supp. 2d 256 (D. Md. 2003); *Clifford v. Apfel*, 227 F.3d 863 (7th Cir. 2000); and *Shoate v. Barnhart*, No. C 02-02162 WHA, 2003 WL 21556939 (N.D. Cal. 2003)).  However, in each of the cases cited by Plaintiff, the medical record contained substantial evidence of the plaintiff's obesity and its effect on a disability.  Specifically, in *Fleming*, the plaintiff's treating physician indicated that the plaintiff's obesity was contributing to his disability, 284 F. Supp. 2d at 261; in *Clifford*, the record included numerous references to the plaintiff's "excessive" weight problem and the links between plaintiff's obesity and disabilities, 227 F.3d at 873; and in *Shoate*, the plaintiff "was diagnosed as obese in three separate medical reports" and her "records contained a diet plan as part of her treatment regime," 2003 WL 21556939 at *4.

In contrast, the administrative record in this case contains evidence of Plaintiff's height and weight, *see* A.R. at 62, 267, but, as Defendant correctly notes, does not contain evidence that Plaintiff's weight impacted her functional capacity in any way.  Def.'s Mot. for J. of Aff. at 14-15.  Significantly, a residual physical functional capacity assessment performed in July 2003 by two state agency physicians does not indicate that Plaintiff had any exertional, postural, or

manipulative limitations, all of which might be expected to result from obesity. A.R. at 232-42. Furthermore, although one of Plaintiff's medical records describes her as "obese," *id.* at 117, and another describes her as "moderately obese," *id.* at 140, neither record suggests any restrictions on Plaintiff's ability to function, or any connection between Plaintiff's weight and her medical conditions. Moreover, as the ALJ found in his opinion, Plaintiff was employed through late 2003, *id.* at 16, and was discharged due to misconduct, not because her weight impeded her ability to work, *id.* at 19, 268. Indeed, based on Plaintiff's medical records, her weight appears to have been stable since at least September 2001. *See* A.R. at 110.

As a result, this case is more factually similar to recent cases cited by Defendant, in which the Seventh and Third Circuits concluded that an ALJ's failure to explicitly consider a plaintiff's obesity did not require a remand because such consideration would not affect the outcome of the case. *See Skarbek v. Barnhart*, 390 F. 3d 500, 504-05 (7th Cir. 2004); *Rutherford v. Barnhart*, 399 F.3d 546, 552-56 (3rd Cir. 2005). Like the Plaintiff in this case, the plaintiff in *Skarbek*, a 6'1" man who weighed 245 pounds and had a BMI of 32.3, did not specifically claim obesity as an impairment. 390 F.3d at 504. The Seventh Circuit noted, however, that "the references to [plaintiff's] weight in his medical records were likely sufficient to alert the ALJ to the impairment." *Id.* (citing *Clifford*, 227 F.3d at 873). Nevertheless, the Third Circuit concluded that "explicit consideration of Skarbek's obesity would not affect the outcome of this case," because the plaintiff did not "specify how his obesity further impaired his ability to walk," and because the ALJ's opinion "adopted the limitations suggested by the specialists and reviewing doctors, who were aware of [plaintiff's] obesity," and therefore indirectly considered the plaintiff's obesity. *Id.*

Similarly, in *Rutherford*, the Third Circuit found that the ALJ's failure to explicitly consider the plaintiff's obesity did not require a remand because the plaintiff, a 5'2" woman who weighed 245 pounds, "never mentioned obesity as a condition that contributed to her inability to work, even when asked directly by the ALJ to describe her impairments." *Rutherford*, 399 F.3d at 553. In so finding, the Third Circuit echoed the Seventh Circuit's analysis, noting that the plaintiff had not specified how her obesity "would affect the five-step analysis undertaken by the ALJ," that "the ALJ relied on the voluminous evidence as a basis for his findings regarding her limitations and impairments," and that "the ALJ's adoption of [plaintiff's treating physicians'] conclusions constitutes a satisfactory if indirect consideration of" her obesity, given her physicians' awareness of her "obvious obesity." *Id.*

Like the plaintiffs in *Skarbek* and *Rutherford*, Plaintiff in this case failed to raise obesity either as a disability or as a factor limiting her functionality.[3] Notably, during Plaintiff's hearing before the ALJ she testified that she suffered from blindness, arthritis, post-traumatic stress, drug and alcohol abuse, depression, suicidal tendencies, and migraine headaches, but made no mention whatsoever of obesity. *See* A.R. 265-274. When the ALJ inquired of Plaintiff whether she suffered from any additional conditions, she did not audibly respond. *See* A.R. at 274. As Plaintiff has failed to demonstrate that her weight has any impact on her ability to work, she has not specified how her obesity would impact the five-step analysis undertaken by the ALJ. Moreover, as in *Skarbek* and *Rutherford*, the ALJ's opinion specifically incorporates reports

---

[3] Indeed, the plaintiffs in *Skarbek* and *Rutherford* each indicated that their obesity made it more difficult to stand and walk, and the *Rutherford* plaintiff additionally claimed that her obesity made it more difficult for her to manipulate her hands and fingers. *See Skarbek*, 390 F.3d at 504, *Rutherford*, 399 F.3d at 553. Here, Plaintiff has not suggested even this minimal impact on her functional capacity.

prepared by at least six different medical and psychiatric professionals, all of whom were presumably aware of Plaintiff's obesity, and none of whom indicate that Plaintiff's obesity had an effect on her functional capacity. A.R. at 17-18, 20-21. As there is therefore no indication that explicit consideration of Plaintiff's obesity would change the outcome of this case, this Court will follow the reasoning of the Seventh and Third Circuits and find that the ALJ's failure to explicitly consider Plaintiff's obesity does not, by itself, require a remand.

    2.    ***Addressing the Residual Function Capacity ("RFC")***

To make a determination under steps Four and Five of the disability analysis, which involve an inquiry into the claimant's ability to return to past work and a determination of whether future employment of any variety is possible, *see* 20 C.F.R. §§ 404.1520, 416.920, the ALJ must engage in a residual functional capacity ("RFC") analysis. 20 C.F.R. §§ 404.1545, 416.945; SSR 96-8p, *Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims*, 1996 WL 374184 at *2 (S.S.A. July 2, 1996). An RFC is "an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical or mental activities." SSR 96-8p, 1996 WL 374184 at *2. The ALJ must explain how he considered and resolved ambiguities in the record with regard to the ultimate RFC decision. *Butler*, 353 F.3d at 1000.

Plaintiff raises a myriad of complaints challenging the RFC analysis. Pl.'s Mot. for J. of Rev. at 9-19. She argues that the ALJ was required to, but did not, perform a function-by-function assessment of Plaintiff's ability to work or include a narrative discussion of how the

evidence supported the ALJ's RFC conclusion. *Id*. at 9-13. Plaintiff further alleges that the ALJ failed to consider pertinent evidence and that the ALJ did not sufficiently address Plaintiff's mental capacity to work. *Id.* at 13-17. Defendant disputes Plaintiff's charge of an erroneous RFC while attacking each error alleged by Plaintiff. Def.'s Mot. for J. of Aff. at 9-16. The Court shall address each of the alleged faults in sequence.

Plaintiff is correct that SSR 96-8p requires the ALJ to first assess a claimant's "work-related abilities on a function-by-function basis" and instructs that "[o]nly after that may RFC be expressed in terms of exertional levels of work . . . ." SSR 96-8p, 1996 WL 374184 at *1.[4] However, SSR 96-8p also provides "[w]hen there is no allegation of a physical or mental limitation or restriction of a specific functional capacity, and no information in the case record that there is such a limitation or restriction, the adjudicator must consider the individual to have no limitation or restriction with respect to that functional capacity." *Id.*

The Court finds that the ALJ performed a sufficient function-by-function assessment of all functions for which the record included evidence of limitations. The ALJ's opinion expressly considers Plaintiff's monocular vision, as required under SSR 96-8p. A.R. at 19. With regard to physical limitations, the ALJ's opinion specifically notes the limitations to which Plaintiff testified, that is, limitations in her ability to walk and stand. A.R. at 19, 271. Plaintiff alleges no limitations as to other physical functions, nor does the administrative record reveal such

---

[4] SSR 96-8p specifically instructs the ALJ to consider the functions in paragraphs (b), (c), and (d) of 20 C.F.R. § 416.945, which include physical abilities (sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions including manipulative or postural functions), mental abilities (understanding, remembering, carrying out instructions, responding appropriately to supervision, coworkers, and work pressures in a work setting), and other abilities affected by impairments (including specifically, impairments of vision). 20 C.F.R. § 416.945.

limitations. Instead, the administrative record, which the ALJ indicates he reviewed, *id.* at 16, includes two physical residual functional capacity assessments performed by state agency physicians, neither of which notes any exertional, postural, or manipulative limitations, *id* at 167-74, 232-42.[5] The ALJ was thus required to assume no limitation of any physical functions other than walking and standing, and expressly incorporated Plaintiff's alleged limitations with respect to those functions in performing his RFC assessment. *Id.* at 19.

The ALJ's opinion also acknowledged all relevant limitations on Plaintiff's mental abilities in determining her RFC. Specifically, the ALJ noted that Plaintiff "has moderate difficulties in maintaining concentration, persistence, or pace . . . [which] may result in the claimant's failure to complete complex or detailed tasks," as well as "mild difficulty in maintaining social functioning." *Id.* at 20.[6] These limitations are consistent with the mental

---

[5] In arguing that the ALJ failed to perform a function-by-function assessment, Plaintiff places significant weight on *Myers v. Apfel*, 237 F.3d 617 (5th Cir. 2001), in which the Fifth Circuit found that an ALJ failed to follow the dictates of SSR 96-8p. The Court notes, however, that the Fifth Circuit has subsequently found that the standard in *Myers* is satisfied when an ALJ's RFC assessment is based in part on medical reports that contain a function-by-function analysis, as well as the ALJ's own appraisal of the claimant's testimony and medical records. *See Beck v. Barnhart*, No. 06-50421, 2006 WL 3059955 at *5 (5th Cir. Oct. 27, 2006); *Onishea v. Barnhart*, No. 03-21028, 2004 WL 1588294 at *2 (5th Cir. Jul. 16, 2004).

[6] Plaintiff also contends that the ALJ was required to perform a "more detailed assessment" of Plaintiff's capacity to perform the mental demands of work by "itemizing various functions . . . summarized on the [Psychiatric Review Technique Form]." Pl.'s Mot. for J. of Rev. at 15-17. Plaintiff's medical records contain two Psychiatric Review Technique Forms, completed by Dr. Patricia Cott and Dr. Pedro M. Ferreira. A.R. at 197-209, 218-30. Each form reflects findings of depressive disorder and substance addiction disorder and rates Plaintiff as having no episodes of decompensation, mild limitation of activities of daily living and maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. *Id.* Despite Plaintiff's argument to the contrary, each of these findings is reflected in the ALJ's opinion. A.R. at 19-20 ("the claimant's mental impairments cause functional limitations that result in only mild restrictions of activities of daily living;" "[t]he claimant has mild difficulty in maintaining social functioning;" "[t]he claimant has moderate

residual functional capacity assessment performed by Dr. Patricia Cott, and specifically referenced by the ALJ in his opinion. *Id.* at 211-13, 20-21. While Dr. Cott also noted that Plaintiff's ability to complete a normal work-day and work-week were moderately or markedly limited, as the ALJ noted, Dr. Cott concluded that Plaintiff "could perform routine work for a regular work week if she abstained from drug and alcohol abuse." *Id.* Thus, the Court determines that the ALJ's RFC assessment contained a sufficient function-by-function and narrative analysis.[7]

Plaintiff next alleges that the ALJ failed to consider relevant evidence in conducting his RFC assessment; however the Court finds, to the contrary, that the ALJ's opinion specifically incorporated the evidence Plaintiff alleges to have been overlooked. Plaintiff asserts that the ALJ failed to mention Dr. Lanham's observation that she was depressed with suicidal ideation and that her ability to concentrate, adapt and interact socially were substantially impaired. Pl.'s Mot. for J. of Rev. at 13. In fact, the ALJ's opinion specifically referenced Dr. Lanham's evaluation, making explicit reference to his findings that Plaintiff suffered from depression, had difficulty concentrating and considered suicide. A.R. at 17. Plaintiff also contends that the ALJ failed to address the persistence, pace, and concentration limitations in Dr. Cott's report, Pl.'s Mot. for J. of Rev. at 13-14; however, as discussed above, this evidence was expressly noted in the ALJ's

---

difficulties in maintaining concentration, persistence, or pace;" "[t]he evidence does not show that the claimant has experienced any repeated episodes of decompensation").

[7] While concluding that the ALJ performed the function-by-function analysis, to the extent required by Plaintiff's allegations and the evidence in the record, the Court notes that ALJs would facilitate judicial review by specifically delineating their findings with regard to each function required to be considered under 96-8p or, in the alternative, noting that no allegations or evidence exists with respect to particular functions.

opinion, A.R. at 20-21. Indeed, this evidence of Plaintiff's mental limitations is incorporated in the RFC assessment, which states that Plaintiff should have limited general public contact. *Id.* at 19. Finally, Plaintiff argues that the ALJ's RFC assessment did not incorporate a state agency physician's finding that Plaintiff had limited depth perception and a limited field of vision. Pl.'s Mot. for J. of Rev. at 14.[8] However, the ALJ's opinion specifically discusses two evaluations performed by Dr. Rhea A. Lloyd, a board certified ophthalmologist, noting Dr. Lloyd's medical findings and her conclusion on September 18, 2002 that Plaintiff's claim of poor vision in her functioning eye "was not substantiated on examination" and that she suspected Plaintiff of malingering. A.R. at 18, 178-80, 215.

The Court therefore finds that the ALJ properly considered the relevant evidence in arriving at his conclusion that Plaintiff retains the "residual functional capacity to perform unskilled light work with a sit/stand option and limited general public contact." A.R. at 19. While Plaintiff is correct that the RFC itself does not mention each of the items of evidence discussed above, the ALJ certainly considered such evidence in his opinion and prefaced the RFC assessment itself with the introduction "[d]espite [plaintiff's] condition and alleged symptoms, after a careful evaluation of the evidence . . . ." A.R. at 19. As a result, the Court cannot conclude that the ALJ's RFC assessment lacked substantial evidence.

### 3.     *Improper Question to Vocational Expert*

The Commissioner bears the burden under Step Five of the disability analysis to show that there are other jobs available in the national economy that can be performed by an individual

---

[8] Plaintiff appears to be referring to the physical residual functional capacity assessment at A.R. 232-42, which includes limitations in depth perception and field of vision at A.R. 235. That report in turn, relies on the April 29, 2003 evaluation performed by Dr. Rhea A. Lloyd.

with the claimant's impairments. *Brown v. Bowen*, 794 F.2d 703, 706 (D.C. Cir. 1986) (citing 20 C.F.R. §§ 404.1520(f), 416.920(f)). In this case, the ALJ did so in part by relying on the testimony of a vocational expert ("VE"), Ms. Tanya Hubacker. Plaintiff now disputes the substance of the questions posed to the VE. Pl.'s Mot. for J. of Rev. at 17-19. During the hearing, the ALJ first asked Ms. Hubaker to assume a hypothetical person of Plaintiff's age, education, and past relevant work experience, who could perform unskilled, sedentary work with a sit/stand option and limited general public contact. *Id.* at 275. Based on this hypothetical, the VE testified that jobs existed in sufficient quantities in the national economy that could be performed by such a person. *Id.* at 275-276. The ALJ then modified the hypothetical slightly, asking:

> Assume the hypothetical person has the same age, education and work experience as the Claimant and who has the capacity to do light work, unskilled with a sit/stand option, and limited general public contact. Can you identify any jobs such a hypothetical person can perform on a sustained basis and which jobs exist in significant numbers in the national economy?

*Id.* at 276. Plaintiff alleges that the question posed to the VE was fundamentally flawed because it did not specifically contemplate Plaintiff's mental limitations. Pl.'s Mot. for J. of Rev. at 18-19. However, as the Court has already concluded that the RFC assessment's limitation on Plaintiff's general public contact properly contemplated her mental limitations, it follows directly that the question to the VE, which also included the "limited general public contact" restriction similarly contemplated Plaintiff's mental limitations.

### 4.   *Plaintiff's Subjective Complaints*

Plaintiff finally contends that the ALJ "applied an improper standard in evaluating the Plaintiff's subjective complaints," Pl.'s Mot. for J. of Rev. at 19, because he failed to address the

17

threshold question of whether Plaintiff had demonstrated by objective medical evidence an impairment capable of causing the degree and type of pain she alleged before undertaking an assessment of the credibility of Plaintiff's subjective claims of pain, *id.* at 20.  Plaintiff is correct that the pain analysis is a two-step process.  First, the claimant must show through "medical signs or laboratory findings" that she suffers an impairment "that could reasonably be expected to produce the alleged pain." *Butler*, 353 F.3d at 1004 (citing 20 C.F.R. §§ 404.1529(a)-(b), 416.929(a)-(b)) (internal quotations omitted).  "The objective evidence must confirm the existence of an impairment reasonably expected to produce the pain, in the amount and degree, alleged by the claimant." *Id.* (citations and internal quotation marks omitted).  Only after this determination has been made can the ALJ proceed to the second step -- i.e., assessing the persistence and intensity of the pain, as well as the extent to which it impairs her ability to work, based on all available evidence, including the claimant's complaints.  *Id.* (citing 20 C.F.R. §§ 404.1529(c)(1)-(3), 416.929(c)(1)-(3)); *see also Craig v. Chater*, 76 F.3d 585, 594-96 (4th Cir. 1986).

      Here, the ALJ discussed in detail six separate medical reports included in the administrative record that address Plaintiff's physical and mental ailments, A.R. at 17-18, before expressly making a threshold finding that Plaintiff had "medically determinable impairments, monocular vision, depression, substance abuse disorder, that could reasonably cause the symptoms, anxiety, pain/headaches, visual disturbances, and problems with concentrating, that she complained about." A.R. at 19.  Only after making this threshold finding, did the ALJ proceed to determine that Plaintiff's "credibility concerning debilitating physical and psychiatric symptoms is low, at best, because her assertions are not supported by the objective medical

evidence . . . and are inconsistent with other evidence or record . . . ." *Id.* As such, the ALJ appropriately applied the relevant legal standard in assessing Plaintiff's subjective complaints and determined – based on medical evidence, Plaintiff's work activities between 1996 and 2003, and evidence of Plaintiff's activities of daily living – that Plaintiff's subjective complaints lacked credibility. *Id.* As "such credibility determinations are for the factfinder who hears the testimony," the Court will not disturb the ALJ's conclusion in this respect. *Brown v. Bowen*, 794 F.2d at 706.

## IV: CONCLUSION

Based on the foregoing review of the relevant law and the administrative record, the Court finds that the Administrative Law Judge applied the correct legal standards when he denied Plaintiff's claims for Social Security Income Benefits and Supplemental Security Income Benefits. The Court shall therefore deny Plaintiff's Motion for Judgment of Reversal and grant Defendant's Motion for Judgment of Affirmance is granted. An appropriate Order accompanies this Memorandum Opinion.

Date: November 20, 2006

                               /s/
                             COLLEEN KOLLAR-KOTELLY
                             United States District Judge